## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Sonya Nelms,

                    Petitioner,          Case No. 19-13331

v.                                       Judith E. Levy
                                         United States District Judge
Shawn Brewer,

                    Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Sonya Helms, who is confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her *pro se* application, Petitioner challenges her conviction for involuntary manslaughter, Mich. Comp. Laws § 750.321, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, possession of a firearm in the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b, and being a third felony habitual offender, Mich. Comp. Laws § 769.11.

For the reasons set forth below, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was originally charged with second-degree murder and felony-firearm. Following a bench trial in the Wayne County Circuit Court, Petitioner was convicted of the lesser-included offense of involuntary manslaughter, felon in possession of a firearm, and felony-firearm. Petitioner was sentenced as a third habitual offender on the involuntary manslaughter conviction to 12 ½ to 30 years in prison, 5 to 10 years on the felon in possession of firearm conviction, and a consecutive 2-year sentence on the felony-firearm conviction.

Petitioner and the victim, Nathaniel Brown, lived together as if they were married. Petitioner's daughter, Destiny Nelms, testified that she considered the victim to be like her father. She testified that on January 7, 2017, she was at her home, located at 221 Fairmount St. in River Rouge, Michigan, where she lived with Petitioner and the victim. Destiny Nelms was in her bedroom, which was next to the bathroom. Destiny Nelms heard Petitioner and the victim arguing and then heard a loud noise that she later learned was a gunshot. (ECF No. 9-6,

PageID.171–176.) Petitioner told Destiny Nelms that the victim's gun went off when it fell. (*Id.* at PageID.185–186.)

Jashlyn Nelms is Petitioner's other daughter. Petitioner called Jashlyn Nelms at about 10:00 pm on January 7, 2017 and said, "Your dad is gone." (ECF No. 9-6, PageID.208.) Petitioner told Jashlyn Nelms that the victim had been shot and Petitioner repeatedly stated, "It [the gun] fell." (*Id.* at PageID.210.)

Police officers arrived at the house, responding to a call regarding a man being shot. (ECF No. 9-6, PageID.219.) When officers entered the home, Petitioner was holding the victim's head to her chest as she sat on the edge of the bathtub. (*Id.* at PageID.222.) One of the officers detected a pulse and the officers moved the victim to the living room to perform CPR until the EMS personnel arrived. When the ambulance arrived, the EMS personnel took over the rescue efforts. (*Id.* at PageID.223.) Petitioner went to the hospital with a police officer after the victim was taken there by ambulance. (*Id.* at PageID.232.)

Sgt. Waple, one of the responding officers, testified that Petitioner told Waple that the victim was taking a bath and that he was twitching when she entered the bathroom. However, he testified that there was no

water in the bathtub and that the victim was dry when he found him. Petitioner told Waple that she thought the victim was joking around but that when she saw that his eyes were rolled back in his head she knew he was injured. Petitioner told Waple that the gun had been on the corner of the sink. (ECF No. 9-6, PageID.244–246.) Petitioner also told Waple that she was not in the bathroom when she heard the gunshot. (*Id*. at PageID.255.)

Det. Sgt. Dasumo Mitchell testified that during the evening of January 7, 2017, he responded to 221 Fairmount St. and that Petitioner was not there when he arrived. (ECF No. 9-6, PageID.259–260.) Mitchell interviewed Petitioner at about 11:30 a.m. on January 8, 2017. Mitchell stated that during Petitioner's first interview, she was not a suspect but that she later became a suspect. Petitioner told Mitchell that the victim shot himself and that, when she entered the bathroom after she heard the gunshot, his back was to the side of the tub. Petitioner told Mitchell that she picked up the gun from the floor. She told him the gun had been sitting on the sink and that the barrel was facing the tub before the shooting. (*Id*. at PageID.263–266, 269–270.) Petitioner informed Mitchell that she and the victim had a good and loving relationship. Mitchell

4

testified that Petitioner went to the police station voluntarily. Mitchell stated that the reason that he questioned her at the police station was to obtain more information on some of the details of the incident. (*Id.* at PageID.277–278.)

Det. Sgt. Danny Dotson testified that he was the officer in charge of Petitioner's case. He explained that the police conducted three interviews with Petitioner. The first interview took place on January 8, 2017 at 12:53 am. Petitioner was not under arrest at that time and no *Miranda* warnings were given. During the first interview, Petitioner stated that she left the bathroom and slammed the door. She said she then heard two bangs and that the second one was louder than the first. Petitioner said she re-entered the bathroom and the victim was squirming in the tub. Petitioner tried to assist him. (ECF No. 9-6, PageID.284–286.)

Police arrested Petitioner after a search of the house was completed. Police interviewed Petitioner a second time on January 8, 2017 at 11:03 a.m., at which time Police advised Petitioner of her *Miranda* rights. Police conducted a third interview on January 9, 2017 at

11:32 a.m.. Dotson also spoke with the medical examiner who conducted the autopsy. (ECF No. 9-6, PageID.289–293.)

Dotson testified that when he confronted Petitioner with the fact that the death was determined to be a homicide and not an accident, she informed Dotson that the victim's motorcycle club members were going to kill her. She then told Dotson that she and the victim struggled over the gun and that it went off during that struggle. Petitioner told Dotson that the victim abused her and that their relationship was not good. Dotson said that Petitioner would not identify the members of the motorcycle club because she feared they would harm her. (ECF No. 9-6, PageID.295–298.)

Petitioner testified that she and the victim lived together as a couple for five years before his death. Petitioner stated that she did not have any trouble with the victim, but that he struggled with emotional problems. On the day of the shooting, the victim was unhappy and Petitioner suggested they go to his motorcycle club's clubhouse in an effort to cheer him up by being with other people.

The victim owned a nine millimeter Smith & Wesson pistol and he always carried his gun with him when he went out. (ECF No. 9-7,

PageID.353–357.) Petitioner testified that the victim was in the bathroom at home and, when she went inside to tell him to hurry up, she saw the gun was in the bathroom with him. Petitioner stated that the victim became angry when she asked him why the gun was in the bathroom. They got into an argument with each one telling the other that they were crazy. Petitioner wanted to remove the gun from the bathroom but the victim did not want her to. Petitioner testified that the victim was getting out of the bathtub and reached for the gun when it went off. Petitioner stated she was so scared that she urinated on herself and that she then saw the victim squirming in the tub and realized he was shot. She tried to pull him out of the tub but he was too wet and heavy for her. She yelled for her daughter Destiny Nelms to call for an ambulance. She said that she told the victim, "[D]on't die on me, I got you." Petitioner testified that when the police arrived she told her daughter to let them into the house.

Petitioner went to the hospital with a police officer and she later testified that she spoke with Waple there. She said that she was hysterical at that time. Petitioner told Waple that she was not in the bathroom when the shot was fired because she was afraid. (ECF No. 9-7,

PageID.359–369.) Petitioner testified that later on she told the detective that she wanted to tell him the truth and not lie anymore. (*Id.* at PageID.374.) Petitioner testified that she told the police during her interviews that the victim's shooting death was accidental. (*Id.* at PageID.381.)

On June 5, 2017, the trial judge issued her verdict. The judge stated that the evidence presented on intent was insufficient to find that Petitioner shot the victim with the intent to kill, the intent to do great bodily harm, or with the intent to act in wanton disregard of the likelihood that her actions would either cause death or great bodily harm. The trial judge then found that the prosecutor proved beyond a reasonable doubt that Petitioner acted in a grossly negligent manner and without lawful excuse or justification when she grabbed the gun in the manner that she did, which caused it to discharge and kill the victim. The judge found Petitioner not guilty of second degree murder but guilty of involuntary manslaughter. Petitioner was also found guilty of felon in possession and felony firearm. (ECF No. 6-8, PageID.419–420.)

Petitioner's conviction was affirmed on appeal. *People v. Nelms*, No. 339789, 2018 WL 6185288 (Mich. Ct. App. Nov. 27, 2018); *lv. den.* 504 Mich. 971, 933 N.W. 2d 270 (2019).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner's sentence for involuntary manslaughter, which is to be served consecutively with her felony-firearm sentence, constitutes an unreasonable and disproportionate sentence, an abuse of discretion, and a violation of the guarantee against cruel and unusual punishment provided by the United States constitution and the guarantee against cruel or unusual punishment provided by the Michigan constitution.

II. Petitioner was denied effective assistance of counsel because trial counsel failed to do a reasonable investigation or call a witness that would have perfected Petitioner's defense.

III. Petitioner is entitled to a new trial because there was a breakdown of the attorney-client relationship.

IV. Trial counsel was ineffective for failing to investigate Petitioner's mental health history to determine her state of mind at the time of the offense.

V. Petitioner's constitutional rights to the assistance of an attorney during a custodial interrogation were violated when she was not read her *Miranda* rights, and even after she was informed of her *Miranda* rights, the interrogation continued unlawfully.

VI. The trial court committed plain error when it excluded evidence of Petitioner's good character, which resulted in a denial of Petitioner's right to present a defense.

VII. The trial court's order that Petitioner pay court-appointed counsel violated Petitioner's due process rights for notice and an opportunity to be heard before deprivation of property.

(*See* ECF No. 1.)

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. Discussion

### A. Claim # 1. The sentencing claim.

Petitioner first argues that her sentence of 12 ½ to 30 years on the involuntary manslaughter conviction as a third habitual offender was disproportionate to the offense and the offender, and that it violates the Eighth Amendment's ban on cruel and unusual punishment.

A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). A sentence within the statutory maximum does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000).

Petitioner fails to state a claim for federal habeas relief on this claim. The United States Constitution does not require that sentences be proportionate. In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the United States Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Id.* at 1001. Furthermore, a sentence within the statutory maximum does not normally constitute cruel and unusual punishment. *Austin,* 213 F. 3d at

302. Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473–74 (6th Cir. 2003) (*citing Harmelin*, 501 U.S. at 999). "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (*quoting United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949).

Moreover, federal courts generally do not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *See United States v. Thomas,* 49 F.3d 253, 261 (6th Cir. 1995); *Vliet v. Renico,* 193 F. Supp. 2d 1010, 1015 (E.D. Mich. 2002). Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

13

Petitioner's sentence of 12 ½ to 30 years in prison was within the statutory limits for the crime of involuntary manslaughter and being a third habitual offender. The maximum penalty for involuntary manslaughter is fifteen years. Petitioner was also charged with being a third felony habitual offender, which allows a judge to double the maximum sentence on the underlying charge. *See People v. Edgett,* 220 Mich. App. 686, 688 (1996) (citing Mich. Comp. Laws § 769.11). Petitioner is not entitled to habeas relief because the sentence of 12 ½ to 30 years for involuntary manslaughter and being an habitual offender was not disproportionate to the crime. *See e.g. Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001) (life sentence for involuntary manslaughter and being a fourth felony habitual offender was not grossly disproportionate to the crime in violation of Eighth Amendment).

Petitioner's related claim that the trial court failed to individualize her sentence by considering mitigating factors on her behalf also fails to state a claim upon which habeas relief can be granted. The United States Supreme Court has refused to extend the doctrine of individualized sentencing to noncapital cases. *See Harmelin v. Michigan*, 501 U.S. at 995–96. In *Harmelin*, the U.S. Supreme Court held that imposition of a

mandatory life sentence without parole without any consideration of any mitigating factors, such as the defendant's work history, did not constitute cruel and unusual punishment. *Id.* at 994–95. Petitioner's argument that her sentence was disproportionate because the trial court failed to consider mitigating evidence submitted on her behalf fails because the U.S. Supreme Court has limited its holding concerning mitigating evidence to capital cases. *Alvarado v. Hill,* 252 F. 3d 1066, 1069 (9th Cir. 2001) (*citing to Harmelin,* 501 U.S. at 996); s*ee also Engle v. United States,* 26 F. App'x 394, 397 (6th Cir. 2001) (the Eighth Amendment does not require consideration of mitigating factors at sentencing in non-capital cases). Because Petitioner had no constitutional right to an individualized sentence, no constitutional error would occur if the state trial court failed to consider mitigating evidence at sentencing. *See Hastings v. Yukins,* 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on her first claim.

### B. Claims # 2, 3, 4, 5, and 6. The ineffective assistance of counsel/*Miranda* claims.

Petitioner, in her second through sixth claims, alleges that she was denied the effective assistance of trial counsel. Petitioner's fifth claim also alleges that the trial judge should have suppressed her statements

15

to the police that were obtained before she had been advised of her *Miranda* rights.

*Strickland v. Washington* established a two-prong test for claims of ineffective assistance of counsel: "[petitioner] must establish (1) that his lawyer's performance was deficient as compared to an objective standard of reasonable performance, and (2) that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

Petitioner, in her second claim, alleges that trial counsel was ineffective for failing to interview and call her friend known as Tasty, whom Petitioner states was on the telephone with Petitioner at the time of the shooting and thus may have bolstered Petitioner's testimony. The Michigan Court of Appeals rejected the claim in part because Petitioner failed to present an affidavit from Tasty indicating that she actually heard anything or could have provided testimony helpful to Petitioner. Without a showing that Tasty actually heard anything of significance, the Michigan Court of Appeals concluded that Petitioner failed to demonstrate that trial counsel's failure to call Tasty deprived her of a

substantial defense, so as to support an ineffective assistance of counsel claim. *People v. Nelms*, 2018 WL 6185288, at * 2.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner did not provide the state courts or this Court[1] with an affidavit from this witness concerning her proposed testimony and willingness to testify on Petitioner's behalf. Petitioner did not offer the Michigan courts any evidence beyond her own assertions as to whether Tasty would have been able to testify and what the content of her testimony would have been. In the absence of such proof, Petitioner is unable to establish that she was prejudiced by counsel's failure to call Tasty as a defense witness, and accordingly she cannot support the second prong of an ineffective

---

[1] This Court would be unable at this point to entertain any affidavits or testimony from the proposed witness if Petitioner had presented such evidence, which she did not do. **Error! Main Document Only.**The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

assistance of counsel claim.[2] *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007). Accordingly, Petitioner is not entitled to habeas relief on her second claim.

In Petitioner's third claim, she alleges that there was a breakdown in the attorney-client relationship.

The Michigan Court of Appeals rejected the claim:

> Defendant has not shown that the trial court erred by failing to provide substitute counsel, or by failing to inquire into the nature of the attorney-client relationship. Most significantly, there is no indication that defendant requested substitute counsel or expressed dissatisfaction with counsel's performance. Moreover, defendant has not shown that she and counsel disagreed on her chosen defense. Instead, defendant restates her claims of ineffective assistance. As discussed earlier, defendant has not demonstrated that she is entitled to relief on her claims alleging ineffective assistance of counsel. In addition, as discussed further below, defendant's claims concerning the admissibility of her statements are without merit. Therefore, she cannot show that counsel acted unreasonably by failing to move to suppress the statements. Additionally, it cannot go unnoticed that defendant's complaints involve disagreements about strategic decisions. Therefore, even if she had presented them to the court, she cannot show that she would have succeeded

---

[2] Nor is Petitioner entitled to an evidentiary hearing on her ineffective assistance of counsel claim with this Court because she failed to present any evidence in the state court in support of her ineffective assistance claim. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

in obtaining substitute counsel. Likewise, although defendant also asserts that there was a breakdown in the attorney-client relationship because she only met with counsel twice before trial, she does not explain why this alone would have required the appointment of substitute counsel. For example, she does not advance an alternate theory that could have resulted in a more favorable outcome if she and counsel had met more frequently. Accordingly, defendant's claim that she is entitled to a new trial because of a breakdown in the attorney-client relationship is unpersuasive.

*People v. Nelms*, 2018 WL 6185288, at * 4.

Petitioner is not entitled to relief on her claim for several reasons. First, motions for substation of counsel must be made in a timely manner before the trial court, and the trial court's decision is then reviewed for an abuse of discretion on appeal. *See United States v. Collado-Rivera*, 830 F. App'x 161164 (6th Cir. 2020) (applying four *Mack* factors on review of a trial court's denial of the defendant's motion for substitution: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." (*quoting United States v. Mack*, 258 F.3d 548, 556 (6th Cir.

19

2001))). Here, Petitioner never requested the appointment of new counsel at the trial court. This alone defeats her substitution of counsel claim. *See e.g. United States v. Nelson*, 238 F. App'x 65, 73 (6th Cir. 2007) (finding that, where the defendant never unequivocally asked the district court to appoint a new attorney, his complaints on appeal regarding counsel's performance were not timely under the first *Mack* factor).

Second, Petitioner failed to establish good cause for substitution of counsel, in that she failed to show that the conflict between herself and her attorney was so great that it resulted in a total lack of communication or complete breakdown of the relationship, which prevented an adequate defense. Petitioner argues that a complete breakdown occurred because her counsel "did not make himself available for [Petitioner] to talk to him," counsel visited her in jail "exactly twice" before trial. (ECF No. 1, PageID.29.) In order to prevail on this argument, the Sixth Circuit requires that petitioners show "more than communication with counsel which the defendant feels is unsatisfactory." *United States v. Jennings*, 83 F. 3d 145, 149 (6th Cir. 1996). Rather, Petition must show that "the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.*

20

(quotation omitted). Petitioner failed to show that defense counsel's failure to visit her in jail more often led to a breakdown in communication between Petitioner and counsel that was so complete that it deprived Petitioner of an adequate defense. The record in this case does not demonstrate that the disagreements between Petitioner and her attorney rose to the level of a conflict sufficient to justify the substitution of counsel, particularly where Petitioner did not raise the issue with the trial court.

In Petitioner's fourth claim, she alleges that trial counsel was ineffective for failing to investigate her state of mind at the time of the offense and/or to call her therapist to testify about Petitioner's state of mind.

The Michigan Court of Appeals rejected this claim:

> Likewise, where defendant faults trial counsel for not introducing defendant's mental health records or testimony from her therapist, defendant has not presented any affidavit or medical records to support her claim that she suffered from any sort of mental illness. Although defendant argues that her therapist's testimony would have caused her to change her assertion at trial that she did not have any psychological problems, she does not explain how or why. Importantly, defendant has not overcome the presumption that trial counsel's decision to not introduce any evidence relating to her mental state was sound trial strategy, particularly where

defendant's defense at trial was that the victim was shot accidentally, and defendant herself testified that the firearm went off when both she and the decedent were struggling over it after exchanging words with each other. We are therefore not persuaded that defendant was denied the effective assistance of counsel.

*People v. Nelms*, 2018 WL 6185288, at * 3.

Petitioner is not entitled to relief on this claim for several reasons. First, Petitioner failed to present medical records or an affidavit from her therapist to the Michigan Court of Appeals nor has she presented any such evidence to this Court. Without such evidence, this Court is unable to determine whether her claim has any viability. Second, Petitioner does not make clear what defense strategy her attorney should have used with the medical records and/or testimony from her therapist.

To the extent that Petitioner is arguing that counsel was ineffective for failing to raise an insanity defense at trial, she is not entitled to relief on this claim. Petitioner's claim is without merit because she failed to present any evidence, either to the state courts, or to this Court, that she was legally insane at the time of the crime. *See, e.g., Sneed v. Johnson,* 600 F. 3d 607, 611 (6th Cir. 2010). Moreover, Petitioner failed to show that she has an expert who would testify that she was legally insane at

22

the time of the offenses, thus, counsel's failure to raise an insanity defense was not prejudicial to Petitioner. *See Abdur'Rahman v. Bell,* 226 F.3d 696, 715 (6th Cir. 2000). Finally, Petitioner raised an accident defense at trial. This defense is inconsistent with an insanity defense. *See e.g. Blocker v. United States*, 274 F.2d 572, 574–75 (D.C. Cir. 1959).

To the extent Petitioner is arguing that counsel was ineffective for failing to present a diminished capacity defense, this claim also fails. In 1994, the Michigan legislature enacted Mich. Comp. Laws § 768.21a, which set forth the legal standards for an insanity defense in Michigan. The Michigan Supreme Court has subsequently held that this statute abolished the diminished capacity defense in Michigan, and that the insanity defense, as established by the Michigan Legislature in § 768.21a, was the sole standard for determining criminal responsibility as it relates to mental illness or cognitive impairment. *See People v. Carpenter,* 464 Mich. 223, 241 (2001); *see also Wallace v. Smith,* 58 F. App'x 89, 94, n. 6. (6th Cir. 2003). Because Michigan no longer recognizes a diminished capacity defense, Petitioner is unable to show that counsel was ineffective in failing to pursue such a defense on her behalf. *See, e.g.,*

23

*Nields v. Bradshaw,* 482 F. 3d 442, 456 (6th Cir. 2007). Accordingly, Petitioner is not entitled to habeas relief on her fourth claim.

In Petitioner's fifth claim, she argues that her statement to the police should have been suppressed because she had not been advised of her *Miranda* rights before being questioned first at the hospital and later at the police station. Alternatively, Petitioner argues that trial counsel was ineffective for failing to move for the suppression of this statement.

The Michigan Court of Appeals rejected the claim:

> In this case, defendant challenges the admission of her statements to the police at the hospital and when first present at the police station. Defendant acknowledges that she was not formally arrested before either of these questionings. She argues, however, that she felt that she was not free to leave the police station after being summoned there. She also asserts that she did not initially want to speak with officers at the hospital. However, it is clear from the record that defendant was not under arrest when she made her initial statements at the hospital. She states that she did not want to talk to the officers, but she does not claim that she was forced to or somehow coerced into answering their questions. Moreover, when questioned at the hospital[,] defendant's friends and family were there with her. In addition, defendant testified that when an officer requested that she come to the police station, he specifically told her that she was not being detained. Although she testified that the officer drove her to the station, she also testified that her family and friends accompanied her. Thus, she was not stranded at the station

24

without a way to leave if she elected to do so. Her description of her initial time at the police station also fails to support a conclusion that she was not free to leave at that time. She testified that she spent 45 minutes in the waiting room before officers called her back to be interviewed and there is no indication in the record that she was not free to leave the police station, particularly where she had family and friends waiting for her. In sum, the circumstances in this case do not demonstrate that defendant was "in custody" at the time she made the challenged statements. Accordingly, there is no basis for concluding that defendant's statements should have been suppressed.

We recognize that this Court has recently observed that the fact that questioning of a defendant takes place in a police station is not determinative in considering whether the defendant was subjected to a custodial interrogation. *People v. Barritt*, 325 Mich.App. 556, ——; —— N.W.2d —— (2018). However, in *Barritt*, this Court ultimately concluded that where the defendant was questioned in a police station, this factor weighed in favor of a determination that he was subjected to a custodial interrogation, particularly where the questioning took place in the constant presence of armed law enforcement officers and the defendant was transported to the police station in a marked police vehicle. *Id*. at ——, —— N.W.2d ——. The present case is factually distinguishable from *Barritt* where defendant was not in the constant presence of armed police officers, and she was free to leave the police station at any time and had family and friends to transport her from the police station.

Consequently, where a motion seeking suppression of defendant's statements would not have been successful, defendant's concurrent claim of ineffective assistance must

also fail. "Failing to advance a meritless argument or raise a
futile objection does not constitute ineffective assistance of
counsel." *People v. Ericksen*, 288 Mich. App. 192, 201, 793
N.W.2d 120 (2010).

*People v. Nelms*, 2018 WL 6185288, at * 5–6.

A prosecutor may not use a defendant's statements that stem from

custodial interrogation unless the prosecutor can demonstrate the use of

procedural safeguards which are effective to secure a defendant's

privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436,

444 (1966). Unless other means are devised to inform a suspect of her

right to silence and a "continuous opportunity to exercise it," the

following warnings are required to be given to a suspect:

> 1. the person must be warned that he or she has a right to
> remain silent;
>
> 2. that any statement she does make may be used against her;
>
> 3. and that she has a right to the presence of an attorney,
> either appointed or retained.

*Miranda*, 384 U.S. at 444.

Police officers are not required to administer *Miranda* warnings to

every person whom they question, nor are officers required to administer

*Miranda* warnings simply because the questioning takes place in a police

station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him or her 'in custody.'" "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F. 3d 604, 632 (6th Cir. 2003).

Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Petitioner was free to leave when she was interviewed by the police at the hospital. Petitioner was not placed under arrest or detained. The Michigan Court of Appeals' determination that Petitioner was not in custody at the hospital so as to trigger the need for *Miranda* warnings was a reasonable determination of the facts and law in this case. *See Peerenboom v. Yukins*, 75 F. Supp. 2d 691, 694–95 (E.D. Mich. 1999)

(finding habeas claim was barred, under AEDPA, when state court of appeals did not unreasonably apply Supreme Court precedent in holding that a petitioner was not in custody when interviewed by police while in the hospital recovering from injuries sustained when the bomb built to kill the intended victim accidentally exploded, and that her statements were not required to be excluded for failure to give *Miranda* warnings).

The evidence at trial also establishes that Petitioner was not under arrest when she went to the police station. Petitioner was not arrested at that point or placed in handcuffs or otherwise detained. Petitioner was not told she was a suspect or that she was not free to leave. Petitioner was not held under guard by the police or placed in a cell. Rather, she stayed in the waiting room with her family and friends until questioning began. Any one of them could have given her a ride home if she changed her mind about answering questions at the police station. Under the circumstances, Petitioner was not in custody, within the meaning of *Miranda,* when she spoke with the police. *See Biros v. Bagley*, 422 F.3d 379, 389–90 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d at 632. Petitioner's *Miranda* claim is without merit.

Without any evidence suggesting that Petitioner was subjected to custodial interrogation within the meaning of *Miranda* when she spoke with the police at the hospital or the police station, "a fairminded jurist could conclude that counsel acted reasonably in choosing not to move for suppression" of Petitioner's statement. *See Wilkens v. Lafler*, 487 F. App'x 983, 993 (6th Cir. 2012). "Given the dearth of record evidence suggesting custody, a fairminded jurist could conclude that [petitioner's] counsel acted competently in focusing his efforts elsewhere." *Id.* at 994. Moreover, Petitioner is unable to show that she was prejudiced by counsel's alleged ineffectiveness, "because, even if [her] counsel had filed the motion to suppress, the trial court would have almost certainly denied it as meritless." *Id.* Petitioner is not entitled to habeas relief on her fifth claim.

In her sixth claim, Petitioner argues that trial counsel was ineffective for failing to call character witnesses on her behalf.

The Michigan Court of Appeals rejected the claim:

Defendant also maintains that trial counsel was ineffective for not offering a character witness to testify on her behalf. She appears to refer to a letter written by a friend of several years. "Under MRE 404(a)(1) a defendant may offer evidence that he or she has a character trait that makes it less likely that he or she committed the charged offense." *People v. Roper*, 286 Mich. App. 77, 93, 777 N.W.2d 483 (2009).

However, had defendant offered evidence of her good character at trial the prosecution would then have been able to offer contrary evidence to rebut defendant's contention that she was of good character. Specifically, MRE 404(a)(1) allows the prosecution to introduce evidence to rebut a defendant's claim of good character. See also *People v. Vasher*, 449 Mich. 494, 503, 537 N.W.2d 168 (1995) (recognizing that where a defendant put his or her character at issue "it is proper for the prosecution to introduce evidence that the defendant's character is not as impeccable as is claimed.") Trial counsel may have reasonably surmised that the risk involved in bringing forth evidence of defendant's good character outweighed the benefit of introducing such evidence, particularly where the record demonstrated that defendant's relationship with the victim, her long-time boyfriend, was at times turbulent. Under such circumstances, defendant has not overcome the strong presumption that trial counsel's actions resulted from sound trial strategy.

*People v. Nelms*, 2018 WL 6185288, at * 3 (additional internal citation omitted).

"[W]hether or not to call a character witness is eminently a tactical decisions (sic) that another court is not in a good position to second-guess. Absent an extraordinary showing by the petitioner, such a claim will not merit a finding that trial counsel performed below the constitutional minimum." *Jelinek v. Costello*, 247 F. Supp. 2d 212, 289 (E.D.N.Y. 2003). The Supreme Court has, in fact, found more limited investigations into a

defendant's background to be justified where any evidence presented would have a "double edge." *Carter v. Mitchell*, 443 F.3d 517, 532 (6th Cir. 2006).

Any decision by counsel to forego presenting character testimony so as to avoid opening the door to potentially damaging information about Petitioner is a valid trial strategy that defeats Petitioner's claim. *See Burger v. Kemp,* 483 U.S. 776, 792 (1987) (counsel's decision not to present character witnesses was not unreasonable because prior convictions might have been introduced on cross-examination); *see also Tinsley v. Million,* 399 F. 3d 796, 809 (6th Cir. 2005); *Payne v. Bell,* 418 F. 3d 644, 667 (6th Cir. 2005).

Regarding the use of character evidence, the Sixth Circuit has noted that "[S]omething, ....is not always better than nothing given the risk that every positive argument by a defendant potentially opens the door to a more-harmful response." *Tinsley,* 399 F. 3d at 810. The Sixth Circuit has also noted that it is "[n]ot even deficient performance, let alone prejudicial," for a defense attorney to fail to introduce evidence of a defendant's background that "would likely [make] him look even worse to the jury [or finder of fact]." *Moore v. Parker*, 425 F. 3d 250, 254 (6th

31

Cir. 2005). Given defense counsel's possible tactical concern that the presentation of character witnesses might open the door to damaging information, the Michigan Court of Appeals' rejection of Petitioner's ineffective assistance of counsel claim was not an unreasonable application of *Strickland,* so as to entitle Petitioner to habeas relief. *Payne,* 418 F. 3d at 667. Petitioner is not entitled to relief on her sixth claim.

### C. Claim # 7. The assessment of fees claim.

Petitioner argues that the trial court erred in imposing fines and costs, particularly for the reimbursement of her court-appointed attorney. Challenges to the imposition of fines and costs by the sentencing court are not appropriate for a petition for a writ of habeas corpus. Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he or she may not bring a petition for a writ of habeas corpus. *See United States v. Watroba*, 56 F. 3d 28, 29 (6th Cir. 1995); *see also U.S. v. Mays,* 67 F. App'x 868, 869 (6th Cir. 2003) (district court lacked subject matter jurisdiction over defendant's § 2255 post-judgment motion to reduce or rescind fine levied in criminal judgment; defendant was not in custody, as required in

a motion to vacate sentence or a petition for a writ of habeas corpus). This Court lacks subject matter over Petitioner's claims that the state court unconstitutionally required her to pay court-appointed counsel's fees, because Petitioner's claim does not challenge her confinement. *See Washington v. McQuiggin,* 529 F. App'x 766, 772–73 (6th Cir. 2013). Accordingly, Petitioner is not entitled to habeas relief on her seventh claim.

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court denies Petitioner a certificate of appealability because she failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. Order

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

IT IS SO ORDERED.
Dated: January 26, 2023                    s/Judith E. Levy

34

Ann Arbor, Michigan        JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2023.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager

35